Devin A. McRae, SBN 223239
  *dmcrae@earlysullivan.com*
Kevin S. Sinclair, SBN 254069
  *ksinclair@earlysullivan.com*
Mark C. Humphrey, SBN 291718
  *mhumphrey@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
DOUG BENSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUG BENSON, on both his own behalf and in the right of and for the benefit of Four Twenty Partners, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DAVID JOSHUA PAUL aka DJ PAUL, an individual; ALEX CAMPBELL, an individual; WABI PICTURES, INC., a suspended California corporation; PBR STREETGANG, INC., a suspended California corporation; VIGORISH PRODUCTIONS, LLC, a California limited liability company; and DOES 1-10, <br><br> Defendants, <br><br> and <br><br> FOUR TWENTY PARTNERS, LLC, a wrongfully canceled California limited liability company, <br><br> Nominal Defendant. | Case No. 2:15-cv-6218 <br><br> **DOUG BENSON'S DERIVATIVE AND INDIVIDUAL VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT, DECLARATORY RELIEF, BREACH OF FIDUCIARY DUTY, CONVERSION AND FRAUDULENT CONCEALMENT** <br><br> **JURY TRIAL DEMANDED** |



Plaintiff Doug Benson ("Benson") alleges as follows:

## INTRODUCTION

1. Benson is a successful stand-up comedian and actor with a loyal legion of passionate fans. Much of his comedy has focused on his copious use of cannabis. In 2006, *High Times* magazine named Benson its "Stoner of the Year."

2. In 2007, just as Benson's career was taking off, Benson formed nominal defendant Four Twenty Partners, LLC (the "Company") with defendant DJ Paul ("Paul"), defendant Alex Campbell ("Campbell") and non-party Michael Blieden ("Blieden") for the purpose of producing a documentary entitled *Super High Me* (the "Documentary"). The Documentary sought to document the effects of cannabis on Benson, by following him through thirty straight days of cannabis-free living, immediately followed by thirty straight days of non-stop use. As made clear by the operating agreement for the Company (the "Agreement"), the production of this *one* project was the sole and exclusive purpose for the Company's formation and existence.

3. The Agreement identified the original members of the Company as Benson, non-party The Claw, Inc. (Blieden's company, hereinafter "Claw"), defendant Wabi Pictures, Inc. (Paul's company, hereinafter "Wabi") and defendant PBR Streetgang, Inc. (Campbell's company, hereinafter "PBR"). The Agreement also appointed Wabi and PBR as the managers of the Company.

4. The Company released the Documentary in 2008. More than six years after the Company had completed the one project which it was formed to create, Campbell contacted Benson's manager several times in 2014 and again in early 2015 about Campbell and Paul creating and releasing a new documentary project entitled *Super High Me Redux* (the "Redux"), consisting of unused footage from the Documentary. The Redux would detail the making of the Documentary (i.e., the one project in which Benson agreed to participate) from Campbell's and Paul's perspectives. Campbell made it clear that he already knew that Benson would not

be in favor of the Redux, but asked Benson's manager to try to enlist him nonetheless. It was repeatedly made clear in these conversations that the Redux would happen with or without Benson's cooperation.

5. In support of the Redux, Paul and Campbell created a trailer consisting of unused footage from the Documentary. Benson did not want this footage released (in a trailer or otherwise) as he fears it would injure his reputation, alienate and upset his fans, and potentially cause irreparable harm to his carefully-cultivated career. Accordingly, Benson refused to consent to such an expansion of the Company's business. Paul and Campbell paid little heed to Benson's objections, claiming that the Agreement specifically authorized them (through the entities they controlled, Wabi and PBR) to make the Redux. It does not.

6. After Paul and Campbell showed no signs of relenting, Benson filed a demand for arbitration on May 22, 2015 with the American Arbitration Association (the "AAA") pursuant to Section 23 of the Agreement (The "Arbitration"). Among other things, Benson sought a declaration that Campbell's and Paul's planned actions violated the Agreement.

7. After Benson initiated the Arbitration, Benson learned that the California Franchise Tax Board had suspended both Wabi and PBR (i.e., Paul's and Campbell's respective companies) years earlier (in 2009 and 2008, respectively). Then, in anticipation of a preliminary hearing with the arbitrator, Paul and Campbell objected to the AAA's jurisdiction, this time revealing that Wabi and PBR had dissolved the Company in 2011 (several years after the Franchise Tax Board had suspended Wabi's and PBR's corporate status). This came as a shock to Benson: At no time prior to Paul and Campbell asserting this objection in the Arbitration did anyone notify him that the Company no longer existed, much less seek his consent to dissolve the Company, as specifically required by the Agreement.

8. According to Paul and Campbell, because the Company had been


1  dissolved, the Agreement had effectively "blinked" out of existence.  Thus, Paul
2  and Campbell (and their suspended entities) refused to participate in the Arbitration.
3  Benson therefore planned to obtain default relief in the Arbitration, and then
4  enforce that relief through the courts.

5       9.     In August 2015, Benson learned for the first time that Paul and
6  Campbell (allegedly on behalf of the Company) had purported to assign the
7  copyright in all of the intellectual property the Company owned to defendant
8  Vigorish Productions, LLC ("Vigorish"),[1] by way of a short form assignment (the
9  "Assignment") recorded with the United States Copyright Office on June 23, 2014.
10  Benson is informed and believes that Vigorish is owned and controlled by Paul and
11  Campbell.  The Assignment was executed by Paul and Campbell individually as
12  Managers of the Company in mid-June 2014, and purported to retroactively assign
13  the copyright in the Documentary effective April 1, 2011 (i.e., two days after the
14  Company was allegedly dissolved).  Benson suspects that Paul and Campbell
15  created and recorded the Assignment in June 2014 because they had begun to
16  formulate plans for the Redux.

17              **THE DISSOLUTION OF THE COMPANY IS A NULLITY**

18       10.    Under California law, "Except for filing an application for tax-exempt
19  status or amending the articles of incorporation to establish a new corporate name, a
20  suspended corporation is disqualified from exercising any right, power or
21  privilege."  *Cal-W. Bus. Servs., Inc. v. Corning Capital Grp.*, 221 Cal. App. 4th
22  304, 310 (2013).

23       11.    By the time that Wabi and PBR attempted to dissolve the Company,
24  the California Franchise Tax Board had already suspended their corporate status.
25  Thus, at the time that Wabi and PBR (i.e., the named managers of the Company)

---

[1] The significance of the name selected by Paul and Campbell for their new entity is not lost on Benson.  The term "vigorish" refers to the interest charged by a loan shark on a usurious loan.



3
**DOUG BENSON'S COMPLAINT**

104804.3

1    purported to dissolve the Company, they had no power to do anything (including
2    dissolve the Company) until they revived their corporate status.

3        12.    Furthermore, even if Wabi and PBR had the basic power to function as
4    corporations in California in 2011 (which they did not), paragraph 9(c)(vii) of the
5    Agreement made clear that the managers could not "attempt to dissolve or withdraw
6    from the Company" without the unanimous written consent of all of the members,
7    including Benson.

8        13.    Because Benson never gave any such consent, neither Wabi and PBR,
9    nor their de facto alter egos Paul and Campbell, could dissolve the Company.
10   Accordingly, the purported dissolution was a nullity.

## THE ASSIGNMENT IS ALSO INVALID

12       14.    As set forth above, Wabi and PBR purported to assign the copyright in
13   the intellectual property owned by the Company to Vigorish.

14       15.    For the reasons set forth in the above paragraphs 10 and 11, by the time
15   of the alleged assignment (i.e., April 2011), neither Wabi nor PBR had the ability
16   under California law to do anything, much less assign a property interest.
17   Apparently for this reason, Paul and Campbell purported to sign the Assignment as
18   the managers of the Company. However, neither of those individuals was ever
19   appointed to act as the managers of the Company. For this reason, alone, the
20   Assignment is void.

21       16.    Furthermore, paragraph 9(c)(vii) of the Agreement also prohibited the
22   managers from "assign[ing] rights in specific Property [i.e., any assets of the
23   Company], for other than a Company purpose" without the unanimous written
24   consent of the members. Per paragraph 4 of the Agreement, the sole purpose of the
25   Company was to develop the Documentary.

26       17.    Assigning intellectual property rights to Vigorish served no Company
27   purpose, and therefore required the unanimous written consent of the members
28   (which consent was never sought or given). As such, the Assignment was also



4
**DOUG BENSON'S COMPLAINT**

104804.3

invalid for this reason, as well.

## BENSON MAY PROPERLY BRING A DERIVATIVE ACTION TO VINDICATE THE RIGHTS OF THE COMPANY

18. As set forth above Benson is, and at all times relevant hereto was, a member in the Company.

19. This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

20. On numerous occasions, Benson made a demand that Paul and Campbell (i.e., the individuals who controlled the now-suspended managers of the Company as well as Vigorish) restore all intellectual property of the Company to the Company, and cease and desist from any further efforts to exploit that intellectual property (including by producing the Redux).

21. To date, Paul, Campbell and Vigorish have failed and refused to comply with Benson's demands.

22. Pursuant to California law, the shareholders or members of a dissolved California corporation or limited liability company may nonetheless maintain a derivative action in the name of the company, notwithstanding its corporate status. Thus, Paul, Campbell, Wabi and PBR could not extinguish the claims against them by simply purporting to cancel the Company's corporate status.

## JURISDICTION AND VENUE

23. The District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) ("the district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks….") and 28 U.S.C. § 1367(a).

24. Venue in this judicial district is proper because Benson is informed and believes that at least Paul and Campbell reside in this judicial district, and that all defendants reside in California.

## THE PARTIES

25. Benson is an individual residing Los Angeles County, California.

26. Benson is informed and believes, and based thereon alleges, that Paul is an individual residing in Los Angeles County, California.

27. Benson is informed and believes, and based thereon alleges, that Campbell is an individual residing in Los Angeles County, California.

28. Benson is informed and believes, and based thereon alleges, that Wabi was a corporation organized under the laws of California, which has since been suspended by the California Franchise Tax Board.

29. Benson is informed and believes, and based thereon alleges, that PBR was a corporation organized under the laws of California, which has since been suspended by the California Franchise Tax Board.

30. Benson is informed and believes, and based thereon alleges, that the Company was a limited liability company organized under the laws of California, which Wabi and PBR wrongfully purported to dissolve.

31. Benson is informed and believes, and based thereon alleges, that Vigorish is a limited liability company organized under the laws of California.

32. Benson is unaware of the true identities of the defendants sued by the fictitious names DOES 1-10. Benson will amend his pleading to identify these persons and entities by their true names as they become known to Benson.

## FIRST CAUSE OF ACTION

**(Copyright Infringement, 17 U.S.C. § 501, et seq. –**

**Against all Defendants Except Wabi and PBR)**

33. Benson hereby incorporates by reference each of the allegations made in paragraphs 1 through 32, inclusive, as though fully set forth herein.

34. Pursuant to paragraph 5 of the Agreement, the "Company shall own the copyright in and to the Picture and all soundtrack and music publishing exploitations relating thereto." Paragraph 1(p) of the Agreement defines the term

1  "Picture" as meaning "the motion picture project currently entitled 'Super High
2  Me'." This definition includes **all** footage shot for the Documentary, whether or not
3  actually used in the released version of the Documentary. The Company is
4  therefore the author and holder of the copyright in the Documentary, including all
5  footage for the Documentary (whether or not used in the released film).

6  35. The Company complied in all respects with 17 U.S.C. § 101, et seq.,
7  and therefore secured the exclusive rights and privileges in and to the copyrights of
8  the above-referenced work.

9  36. Paul's, Campbell's and Vigorish's conduct has violated the exclusive
10 rights belonging to the Company as the owner of the above-referenced copyright,
11 including the Company's rights under 17 U.S.C. § 106. In particular, these three
12 defendants have violated the Company's copyright by developing and attempting to
13 commercially exploit the trailer for the Redux referenced in the above paragraph 5,
14 and by continuing to develop the Redux with copyright-protected footage of the
15 Company.

16 37. On information and belief, Benson alleges that, as a direct and
17 proximate result of their wrongful conduct, Paul, Campbell and Vigorish have
18 realized and continue to realize profits and other benefits rightfully belonging to the
19 Company. Accordingly, Benson (on behalf of the Company) seeks an award of all
20 allowable statutory damages, fees and costs pursuant to 17 U.S.C. §§ 504 and 505.

21 38. Paul's, Campbell's and Vigorish's conduct and threatened continued
22 conduct will also cause irreparable injury to the Company, as the Agreement makes
23 clear that the Company's intellectual property could only be used for the
24 development of the Documentary, and the Agreement therefore reserved for the
25 unanimous consent of the members the right to change the Company's purpose (i.e.,
26 so that the Company's intellectual property could be exploited for some other
27 purpose). Thus, Benson alleges that the Company is also entitled to injunctive
28 relief against Paul, Campbell and Vigorish, pursuant to 17 U.S.C. § 502, enjoining

1  and restraining them from any further use of the Company's copyright-protected

2  materials.

3      39.    Pursuant to 17 U.S.C. § 503, Benson also prays, on behalf of the

4  Company, that the Court impound and restore to the Company all tangible protected

5  materials in Paul's, Campbell's and Vigorish's control, including without limitation,

6  all film and all digital media from the Documentary.

7      40.    Finally, as part and parcel of this cause of action, Benson seeks on

8  behalf of the Company a declaratory judgment, pursuant to 28 U.S.C. § 2201, et

9  seq., that the Company continues to own the copyright in all footage for the

10 Documentary, and the Assignment is null, void and of no force or effect.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment, 28 U.S.C. § 2201, et seq. –
### Against All Defendants Except Vigorish)

14     41.    Benson hereby incorporates by reference each of the allegations made

15 in paragraphs 1 through 40, inclusive, as though fully set forth herein.

16     42.    Benson is informed and believes, and based thereon alleges, that an

17 actual controversy exists between himself, on the one hand, and Paul, Campbell,

18 Wabi and PBR, on the other hand, insofar as Benson contends, and Paul, Campbell,

19 Wabi and PBR dispute, that the purported dissolution of the Company is a nullity.

20     43.    Thus, pursuant to 28 U.S.C. § 2201, Benson prays for a judicial

21 declaration that the dissolution of the Company was a nullity, and that the

22 Company's corporate status should be restored and revived, and that Benson may

23 take any action required by the California Secretary of State to effect the restoration

24 and revival of the Company.



## THIRD CAUSE OF ACTION

## (Breach of Fiduciary Duty Owed to the Company –

## Against All Defendants Except Vigorish)

44. Benson hereby incorporates by reference each of the allegations made in paragraphs 1 through 43, inclusive, as though fully set forth herein.

45. In their capacity as managers, Wabi and PBR owed certain fiduciary duties to the Company, including duties of care and loyalty.

46. Paul and Campbell (who controlled Wabi and PBR) breached those duties by, among other things, purporting to assign the Company's sole asset – the intellectual property rights – to Vigorish for no consideration.

47. Benson is informed and believes, and based thereon alleges, that Wabi and PBR also breached their fiduciary duties by failing to pay the Company's taxes.

48. As a result of these breaches, Benson is informed and believes that the Company suffered damages.

49. Additionally, these defendants maliciously and oppressively acted with a callous disregard for the rights of the Company, thereby exposing them to punitive damages under California law.

50. Furthermore, Wabi and PBR were not authorized to act as corporations under California law. Therefore, the liability shield ordinarily afforded to shareholders did not exist. Accordingly, Paul and Campbell are jointly and severally liable for the torts of their corporate instrumentalities.

51. Even if suspension did not nullify the liability shield, Benson is informed and believes that Wabi and PBR were the mere alter-egos of Paul and Campbell. Benson is informed and believes that Wabi and PBR existed solely as liability shields for the purpose of the production of the Documentary (and formation of the Company), that neither had any separate assets and that a manifest injustice would result unless the Court disregarded the corporate form.

1  52. In addition to monetary relief, pursuant to Cal. Corp. Code §
2  17706.02(e)(1) Benson hereby applies, on behalf of the Company, for an order
3  dissociating Wabi and PBR from the Company, and terminating them as managers
4  of the Company.

## **FOURTH CAUSE OF ACTION**

### **(Conversion – Against All Defendants)**

53. Benson hereby incorporates by reference each of the allegations made in paragraphs 1 through 52, inclusive, as though fully set forth herein.

54. As set forth above, the Agreement prohibited anyone from transferring the Company's intellectual property rights without the unanimous consent of the members. Because such consent was not given, and because they were never appointed as managers of the Company, Paul and Campbell lacked the authority to enter into the Assignment on behalf of the Company.

55. The Assignment amounted to actionable conversion and misappropriation of the Company's assets, resulting in damages to the Company.

56. The defendants named herein maliciously and oppressively acted with a callous disregard for the rights of the Company, thereby exposing them to punitive damages under California law.

57. For the reasons set forth in the above paragraphs 50 and 51, Benson contends that Paul and Campbell are liable for the wrongs of Wabi and PBR.

## **FIFTH CAUSE OF ACTION**

### **(Breach of Fiduciary Duty Owed to the Members –**
### **Against All Defendants Except Vigorish)**

58. Benson hereby incorporates by reference each of the allegations made in paragraphs 1 through 57, inclusive, as though fully set forth herein.

59. In their capacity as managers, Wabi and PBR owed certain fiduciary duties to the members of the Company, including duties of care and loyalty.



**DOUG BENSON'S COMPLAINT**

104804.3

60. Wabi and PBR breached those duties by, among other things, purporting to wrongfully dissolve the Company without the unanimous written consent of the membership.

61. As a result of Wabi's and PBR's breaches, Benson has suffered damages.

62. Additionally, Wabi and PBR maliciously and oppressively acted with a callous disregard for the rights of the members in the Company, thereby exposing them to punitive damages under California law.

63. For the reasons set forth in the above paragraphs 50 and 51, Benson contends that Paul and Campbell are liable for the wrongs of Wabi and PBR.

## SIXTH CAUSE OF ACTION

### (Fraudulent Concealment – Against All Defendants Except Vigorish)

64. Benson hereby incorporates by reference each of the allegations made in paragraphs 1 through 63, inclusive, as though fully set forth herein.

65. As set forth in the above paragraphs 5 through 9, Paul, Campbell, Wabi and PBR knowingly and intentionally concealed from Benson the fact that they had both purported to dissolve the Company, and the fact that they had purported to assign the copyright to Vigorish.

66. Benson did not learn of the purported dissolution of the Company or the purported Assignment until he initiated the Arbitration.

67. Paul, Campbell, Wabi and PBR sought to deceive Benson by concealing these facts from him.

68. Had these facts been disclosed, Benson reasonably would have behaved differently.

69. As a result, Benson suffered harm, which was substantially caused by Paul, Campbell, Wabi and PBR.



11
**DOUG BENSON'S COMPLAINT**

104804.3

70. As a result of Paul's, Campbell's, Wabi's and PBR's fraudulent conduct, Benson is alto entitled to exemplary and punitive damages under California law.

### SEVENTH CAUSE OF ACTION

### (Breach of the Agreement – Against All Defendants Except Vigorish)

71. Benson hereby incorporates by reference each of the allegations made in paragraphs 1 through 70, inclusive, as though fully set forth herein.

72. Benson, Claw, Wabi and PBR entered into the Agreement.

73. Benson has done everything required of him by the Agreement.

74. Wabi and PBR have breached the Agreement by, among other things, purporting to dissolve the Company and purporting to change the Company's primary business (i.e., by threatening to make the Redux), all without the unanimous consent of the members.

75. As a result of Wabi's and PBR's breaches, Benson has suffered damages.

76. For the reasons set forth in the above paragraphs 50 and 51, Benson contends that Paul and Campbell are liable for the wrongs of Wabi and PBR.

### PRAYER

### On the First Cause of Action

1. An award of all allowable statutory damages, fees and costs pursuant to 17 U.S.C. §§ 504 and 505.

2. A permanent injunction pursuant to 17 U.S.C. § 502, enjoining and restraining Paul, Campbell and Vigorish from any further use of the Company's copyright-protected materials.

3. An order impounding and restoring to the Company all tangible copies of all of the Company's copyright-protected materials in the possession, custody or control of Paul, Campbell or Vigorish.



**DOUG BENSON'S COMPLAINT**

104804.3

4. A declaratory judgment, pursuant to 28 U.S.C. § 2201, et seq., that the Company continues to own the copyright in all footage for the Documentary, and the Assignment is null, void and of no force or effect.

### On the Second Cause of Action

5. A declaratory judgment, pursuant to 28 U.S.C. § 2201, et seq., that the dissolution of the Company was a nullity, and that the Company's corporate status should be restored and revived, and that Benson may take any action required by the California Secretary of State to effect the restoration and revival of the Company.

### On the Third through Seventh Causes of Action

6. For actual damages according to proof.

7. For punitive damages, pursuant to Cal. Civ. Code § 3294.

### On All Causes of Action

8. For costs of suit.

9. For attorneys' fees and costs, to extent that any relief granted arises out of a dispute on the Agreement.

10. For such other and further relief as the Court may deem just or appropriate.

### JURY DEMAND

Benson demands a trial by jury on all causes of action so triable.

Dated: August 14, 2015    EARLY SULLIVAN WRIGHT
                                                GIZER & McRAE LLP


By: */s/--Devin A. McRae*
    DEVIN A. MCRAE
    Attorneys for Plaintiff
    DOUG BENSON



**DOUG BENSON'S COMPLAINT**

104804.3

## VERIFICATION

I have read the foregoing **DOUG BENSON'S DERIVATIVE AND INDIVIDUAL VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT, DECLARATORY RELIEF, BREACH OF FIDUCIARY DUTY, CONVERSION AND FRAUDULENT CONCEALMENT** and know its contents.

The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on August 13, 2015 at Los Angeles, California.

_____
Doug Benson

VERIFICATION

104804.3